UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORDAN S. EDWARDS,<br><br>　　　　　　　　　　Petitioner,<br><br>v.<br><br>ANNA E. VILLALPANDO, Commanding Officer of Naval Consolidated Brig Miramar,<br><br>　　　　　　　　　　Respondent. | Case No.: 24-CV-1502 JLS (SBC)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**<br><br>(ECF No. 1) |

  Presently before the Court is Petitioner Jordan S. Edwards's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Pet.," ECF No. 1). Also before the Court is Respondent United States of America's Opposition ("Opp'n," ECF No. 11) and Petitioner's Traverse ("Traverse," ECF No. 12). The Court finds this matter appropriately decided on the papers without oral argument pursuant to Civil Local Rule 7.1(d)(1). Having carefully considered the Parties' filings and the law, the Court **DENIES** the Petition for the reasons that follow.

## BACKGROUND

  Petitioner is a former officer in the United States Air Force who had obtained the rank of Captain. Pet. ¶ 5. He is presently confined at the Naval Consolidated Brig in Miramar, California, where he was ordered to serve a 42-month sentence resulting from

two convictions in a general court-martial related to a sexual assault perpetrated against his then-wife, SL. *Id.*; *United States v. Edwards*, No. ACM 40349, 2023 WL 8543590, at *1–2 (A.F. Ct. Crim. App. Dec. 11, 2023).

As described by the appellate court in Petitioner's direct appeal of his convictions, Petitioner and SL met online in June 2017. *Edwards*, 2023 WL 8543590, at *1. Although the couple "quickly established an 'intimate friendship,'" the relationship was a "tumultuous" one that featured multiple breakups and reconciliations over the course of the next several years. *Id.* Eventually, in February 2019, SL co-located with Petitioner at Petitioner's home in Ohio where Petitioner worked. *Id.* at *2. There, SL stayed home to care for the four children Petitioner and SL were raising from previous relationships. *Id.* at *2. The couple "engag[ed] in consensual sexual intercourse . . . at least two to three times every day," but there were evenings when SL felt too tired to engage in sexual intercourse. *Id.* On those evenings, of which there were several over the next few months, SL went to sleep only to wake up to find Petitioner "penetrating her vagina with his penis." *Id.*

Despite SL's pleas that she did not wish to have sex in certain instances, Petitioner "continued to initiate vaginal sex while SL slept on multiple occasions, commencing one week after the initial sleep penetration." *Id.* SL reports that Petitioner would occasionally become enraged with her indifference towards engaging in nightly sexual intercourse, so she began pretending that she was asleep rather than telling him to stop out of fear of inciting Petitioner's rage. *Id.* After two months of this behavior, SL moved back to California, though the couple "continued to talk every day and visited each other in Ohio or California." *Id.*

Later in 2019, the couple moved back in together and they ultimately married on December 9, 2019. *Id.* Then, when Petitioner was reassigned to the Los Angeles area, the couple moved in with Petitioner's aunt who lived nearby. *Id.* Back to living together again, Petitioner reverted to his old ways and recommenced his sexual penetration upon SL while SL slept. *Id.* As before, "SL pretended to still be sleeping and [Petitioner] continued to

penetrate her until he ejaculated." *Id.* This pattern recurred multiple times over the next three months.

At wit's end, SL filed for a restraining order on March 5, 2021, Pet. ¶ 19, and Petitioner was charged with multiple specifications under the Uniform Code of Military Justice ("UCMJ"), Opp'n at 2. Petitioner was convicted at a general court-martial of two specifications of sexual assault upon a person who was asleep, in violation of Article 120, UCMJ, 10 U.S.C. § 920, and one specification of conduct unbecoming an officer and a gentleman, in violation of Article 133 UCMJ, 10 U.S.C. § 933. *Edwards*, 2023 WL 8543590, at *1. Consequently, Petitioner was sentenced to a dismissal, confinement for 42 months, and a reprimand. *Id.* His sentence was entered on July 12, 2022. *Id.*

Petitioner appealed his convictions and sentence to the Air Force Court of Criminal Appeals ("AFCCA"), but the court affirmed the findings and sentence on December 11, 2023. *See id.* at *9. In affirming the trial court, the AFCCA considered and rejected four arguments: (1) that the military judge admitted improper evidence of uncharged acts under Military Rule of Evidence ("MRE") 404(b), (2) that the sexual assault convictions were legally and factually insufficient, (3) that Petitioner was deprived of his constitutional right to a unanimous verdict, and (4) that Petitioner's sentence was inappropriately severe. *See id.* at *1. Petitioner sought review of the AFCCA decision by the United States Court of Appeals for the Armed Forces ("CAAF"), but that court denied review on March 28, 2024. *United States v. Edwards*, 84 M.J. 342 (2024). After his time to request reconsideration had run, Petitioner moved the CAAF for leave to file a petition for reconsideration out of time on the basis that his appellate counsel was ineffective, *see* Opp'n at 4, but the CAAF denied the Motion on July 16, 2024, *see* Ex. 6, Opp'n.

On August 23, 2024, Petitioner filed the instant Petition. The Petition advances four claims: (1) that the AFCCA did not fully and fairly consider Petitioner's claim that he was entitled to a unanimous jury verdict, (2) that the evidence was not legally and factually sufficient to support Petitioner's convictions for sexual assault, (3) that the AFCCA did not

fully and fairly consider Petitioner's claim that the military judge abused his discretion in admitting improper evidence under MRE 404(b), and (4) that Petitioner's counsel exhibited ineffective assistance both at trial and on appeal. *See generally* Pet. Petitioner requests this Court issue a writ of habeas corpus ordering the reversal of Petitioner's convictions in their entirety, including the immediate release of Petitioner from custody and the restoration of all pay, rank, benefits, entitlements, and privileges that have been denied as a result of the convictions. Pet. Prayer for Relief.

On August 27, 2024, the Court ordered Respondent to show cause why the Petition should not be granted. *See* ECF No. 4. Respondent timely filed its Opposition on January 3, 2025, *see* Opp'n, and Petitioner filed his Traverse on February 3, 2025, *see* Traverse.

## LEGAL STANDARD

"Federal district courts have jurisdiction to review habeas corpus petitions that challenge military convictions." *Bessmertnyy v. Kirk*, No. 3:21-cv-779-L-KSC, 2022 WL 255425, at *1 (S.D. Cal. Jan. 27, 2022) (first citing 28 U.S.C. § 2241; and then citing *Burns v. Wilson*, 346 U.S. 137, 139 (1953)). But federal district courts "do not sit to supervise the military courts; rather our review is limited. Habeas corpus is available only to guard against the military courts exceeding their jurisdiction and to vindicate constitutional rights." *Broussard v. Patton*, 466 F.2d 816, 818 (9th Cir. 1972) (internal citations omitted). This supervisory role over military courts is even more limited than that over state courts out of respect for the military's need to "enforce a respect for discipline that would be wholly intolerable in civilian life." *Davis v. Marsh*, 876 F.2d 1446, 1449 (9th Cir. 1989) (first citing *Goldman v. Weinberger*, 475 U.S. 503, 507 (1986); and then citing *Schlesinger v. Councilman*, 420 U.S. 738, 757–58 (1975)).

Thus, in considering a habeas corpus petition that challenges a military conviction, the court may only "inquir[e] as to whether the military have given fair consideration to each of the petitioner's claims. But once it has been concluded by the civil courts that the military had jurisdiction and dealt fully and fairly with all such claims, it is not open to

such courts to grant the writ simply to re-evaluate the evidence." *Sunday v. Madigan*, 301 F.2d 871, 873 (9th Cir. 1962) (citing *Burns*, 346 U.S. at 142). "De novo review is only warranted where 'the military courts manifestly refuse to consider' a petitioner's claims." *Threats v. Howard*, No. CV-21-00333-TUC-JAS(BGM), 2023 WL 8112601, at *3 (D. Ariz. Mar. 24, 2023) (quoting *Burns*, 346 U.S. at 142).

## ANALYSIS

Respondent's argument is simple: The military courts need only give full and fair consideration to the claims, and that low threshold is met here. Opp'n at 7–8. Petitioner disagrees. In reliance on a plethora of out-of-circuit authority, Petitioner initially suggests in his Petition that the Court should scrutinize the merits of his claims with an inquiry much closer to *de novo* review. *See* Pet. at 8. In so doing, he describes the standard of review as a two-step analysis requiring the Court to "(1) review[] the military court's thoroughness in examining the relevant claims, where thoroughness is contested; and (2) closely look[] at the merits of the claim, albeit with some degree of deference more than under a *de novo* standard." *Id.* Petitioner appears to backtrack in his Traverse, however, by conceding that "this Court is bound by the Ninth Circuit's case law regarding 'full and fair consideration.'" Traverse at 2. Nevertheless, Petitioner still advances the argument in his Traverse that the military courts failed to give full and fair consideration to at least some of his claims, thus entitling him to relief.[1] The Court will consider each claim in turn.

### I.  Entitlement to a Unanimous Jury Verdict

Petitioner's first argument—that Petitioner was entitled to a unanimous jury verdict at his court-martial—was first presented to the AFCCA on direct appeal. There, the court summarily dismissed Petitioner's claim, stating it had "carefully considered [the issue] and find[s] it does not require discussion or relief." *Edwards*, 2023 WL 8543590, at *1. In

---

[1] Petitioner apparently concedes that multiple of his claims may be legally deficient, particularly his claim asserting the right to a unanimous jury trial. *See* Traverse at 2 n.1. But because Petitioner's briefing is generally murky as to which specific claims he concedes, the Court will proceed to analyze all four claims from the Petition.

reaching that conclusion, the court cited to *United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987), and accompanied the conclusion with a footnote citing the CAAF's prior opinion in *United States v. Anderson*, 83 M.J. 291, 302 (C.A.A.F. 2023).

Petitioner now comes to this Court essentially asking to re-litigate *Anderson*. *See* Pet. at 10. As background, "the UCMJ expressly authorizes a court-martial to convict a servicemember subject to a general or special court-martial of a criminal offense 'by the concurrence of at least three-fourths of the members present when the vote is taken.'" *Anderson*, 83 M.J. at 294 (quoting Article 52(a)(3), UCMJ, 10 U.S.C. § 852(a)(3)). This procedural rule from the UCMJ reflects this nation's longstanding tradition of permitting nonunanimous verdicts within the military justice system. *Id.* That longstanding tradition, however, was called into question when the Supreme Court decided *Ramos v. Louisiana*, which held that "the Sixth Amendment's unanimity requirement applies to state and federal criminal trials equally." 590 U.S. 83, 93 (2020).

Whether the Supreme Court's incorporation of the right to a unanimous jury against the states in *Ramos* should similarly be extended to military courts was the question presented in *Anderson*, but there, the military's highest court answered in the negative. The *Anderson* court recognized that "*Ramos* held that the Sixth Amendment right to a jury trial . . . requires unanimous verdicts to convict defendants of serious offenses," but it declined to extend that right to the military justice system. 83 M.J. at 297–98. Despite rigorous examination of the language in *Ramos*, the CAAF recognized "that at no time during the entire history of the American military justice system has impartiality been understood to require unanimous verdicts." *Id.* at 297. Accordingly, in view of *Ramos*, the military courts have concluded, after careful consideration, that servicemembers do not enjoy the right to a unanimous jury verdict. The Supreme Court denied certiorari in *Anderson*, and thus declined to disturb that understanding. 144 S. Ct. 1003 (2024) (denying certiorari).

Petitioner now argues the "CAAF's decision [in *Anderson*] is incorrect," *see* Pet. at 10, but that argument has no place in this habeas corpus petition. Here, the Court's role

is to serve "the limited function . . . to determine whether the military have given fair consideration to" Petitioner's claim, and it is clear that they have.[2] *See Burns*, 346 U.S. at 144 (citing *Whelchel v. McDonald*, 340 U.S. 122 (1950)). Though dealt with only briefly on direct appeal, Petitioner's precise argument has already been thoroughly briefed, argued, and analyzed by the CAAF in prior cases, and the AFCCA was not obligated to rinse-and-repeat its reasoning when presented with an identical issue by Petitioner. *See Andreozzi v. Tracy*, No. CV-16-00562-PHX-DGC (BSB), 2016 WL 8670166, at *3 (D. Ariz. July 8, 2016) ("If an issue was 'briefed and argued' before a military court and disposed of, 'even summarily,' the federal habeas court should find that the claim was given full and fair consideration." (first quoting *Watson v. McCotter*, 782 F.2d 143, 145 (10th Cir. 1986); and then quoting *Lips v. Commandant, U.S. Disciplinary Barracks*, 997 F.2d 808, 812 n.2 (10th Cir. 1993))). It was enough for the AFCCA to refer Petitioner to the military courts' prior decisions as justification for denying his argument anew.

Indeed, this Court, just months ago, rejected a nearly identical argument from a different habeas corpus petitioner who challenged the nonunanimous jury verdict in his

---

[2] The Court recognizes that, in some instances, district courts in this circuit have opted for *de novo* review of constitutional claims on collateral attack "because the consequences of [a court-martial conviction] are serious and may cause 'lasting, serious harm in civilian life.'" *See Lewis v. United States*, 2019 WL 5320691, at *2 (S.D. Cal. Oct. 21, 2019) (quoting *Hatheway v. Sec'y of Army*, 641 F.2d 1376, 1380 (9th Cir. 1981)). But other district courts have also acknowledged that the *Hatheway* court "explicitly restricted its holding to the narrow proposition that . . . *Burns* permits review by district courts in *non-habeas cases* limited to the overall constitutionality of a military provision." *See, e.g.*, *Gurry v. Butera-Ortiz*, No. C 11-00964 RS, 2012 WL 3276983, at *2 (N.D. Cal. Aug. 9, 2012) (emphasis added).

To the extent that some courts have reviewed facial constitutional claims *de novo*, this Court does not find those decisions persuasive, particularly "in light of the Supreme Court's repeated admonitions that we accord even more deference to military court determinations than to those of state courts." *Davis*, 876 F.2d at 1449. It would be a peculiar result indeed if the Court were to collaterally review a court-martial conviction *de novo* when state court convictions are not so heavily scrutinized. *See Clements v. Madden*, 112 F.4th 792, 799 (9th Cir. 2024) ("Accordingly, we defer to the judgment of the state court when reviewing claims that were adjudicated on the merits, unless the state court's decision was (1) 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" (quoting 28 U.S.C. § 2254(d)(1)–(2))).

own court-martial. *Emas v. Roman*, No. 23-cv-2194-BTM-DDL, 2024 WL 4573755, at *2 (S.D. Cal. Oct. 24, 2024) ("The record reflects that the issue whether Petitioner was entitled to a unanimous court-martial verdict was extensively briefed and argued on appeal, and the AFCCA's citation to its earlier opinion in *Anderson* demonstrates the court considered Petitioner's claim on the merits and rejected it. As such, the AFCCA 'fully and fairly consider[ed] the claim,' and habeas relief is unwarranted." (quoting *Johnson v. Rodriguez*, No. 22-55782, 2024 WL 3102799, at *1 (9th Cir. June 24, 2024) (unpublished opinion))).[3] In the instant action, Petitioner relies on no adjudicative facts peculiar to his case that dictate a different conclusion. As in *Emas*, the military courts in Petitioner's case fully and fairly considered his argument that he was entitled to a unanimous jury verdict.

## II.   Legal and Factual Sufficiency of the Evidence

Petitioner next raises the argument that the evidence presented at his court-martial trial was not legally or factually sufficient to support his convictions. In support of this argument, Petitioner questions SL's credibility as a trial witness and argues that her testimony "was not 'sufficiently credible' to support Petitioner's convictions." Pet. at 17. Petitioner argues this Court should review factual and legal sufficiency *de novo* due to its obligation "to independently evaluate the court-martial's factual record." *Id.* at 16 (citing *Loveday v. Davis*, 697 F.2d 135, 138 (6th Cir. 1983)).

The Court has no such obligation. Petitioner cites primarily to appellate decisions from military courts to support the proposition that *de novo* review is in order, but this Court's standard of review, as established above, is entirely distinct from that of the military courts. *See, e.g.*, *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) ("Article 66(c) requires the [Air Force] Court[] of Criminal Appeals to conduct a *de novo* review of legal and factual sufficiency of the case." (citing *United States v. Cole*,

---

[3] The *Emas* decision was a report and recommendation by Magistrate Judge David Leshner that has yet to be adopted by the presiding District Judge Ted Moskowitz. Nevertheless, the petitioner there was given until November 7, 2024, to file objections yet no objections have been filed.

31 M.J. 270, 272 (C.M.A. 1990))). In contrast to the *de novo* review afforded servicemembers on direct appeal of court-martial convictions, it is not for "civil courts simply to repeat that process—to re-examine and reweigh each item of evidence." *Erickson v. Von Blanckensee*, No. 19-16165, 2021 WL 5399871, at *1 (9th Cir. Nov. 18, 2021) (unpublished opinion) (quoting *Broussard*, 466 F.2d at 818). And Petitioner's reliance on *Loveday* is entirely inapposite as the petitioner in that case was challenging a conviction in the Criminal Court for Green County, Tennessee under 28 U.S.C. § 2254 that required a less deferential standard of review than permitted here. *See Davis*, 876 F.2d at 1449 ("Federal courts accordingly play a supervisory role even more limited than they play with respect to state courts.").

In light of the applicable standard of review in this particular habeas challenge, the Court comfortably concludes that the military courts have given full and fair consideration to Petitioner's legal and factual sufficiency claim. On direct appeal, the AFCCA properly reviewed Petitioner's claim *de novo*, assessing the sufficiency of SL's trial testimony under the appropriate standard. *Edwards*, 2023 WL 8543590, at *6–8. The court's assessment included an evaluation of swaths of testimony taken wholesale from the trial transcript in which SL described in detail how Petitioner had penetrated her while she was asleep. *See id.* at *7. That evaluation yielded the conclusion that "[t]he totality of SL's testimony makes clear that, aside from the first incident, on occasions when SL awoke from her sleep to [Petitioner] penetrating her, she pretended to be asleep." *Id.* at *8. The court also considered Petitioner's argument that SL was not a credible witness, yet it rejected that argument as well. *Id.* ("Evidence of SL's credibility, including inconsistent statements and allegations of motives to fabricate, were presented at trial. . . . Viewing all the evidence offered at trial, the members rationally and reasonably found the essential elements of the offenses beyond a reasonable doubt."). Accordingly, irrespective of the correctness of the

///
///
///

AFCCA's conclusion, it is clear the court gave full and fair consideration to the claim.[4] *See Donoho v. Kirk*, No. 23-55600, 2024 WL 2952535, at *1 (9th Cir. June 12, 2024) (unpublished opinion) (rejecting the petitioner's argument that the district court must consider whether the AFCCA reached its decisions "thoroughly and correctly").

### III.  Improper Admission of Evidence Under MRE 404(b)[5]

The third basis upon which Petitioner seeks to have his court-martial vacated relates to the military judge's admission of evidence of Petitioner's "controlling behaviors" under MRE 404(b). Petitioner argues that the prosecution improperly introduced evidence at trial of "coercive control and intimate partner violence" to support the factual determination that Petitioner had penetrated SL while she was sleeping. Such evidence, says Petitioner, is not logically relevant to whether SL was, in fact, asleep during certain instances of penetration. Pet. at 19–20. Petitioner claims the admission of this evidence was mistaken under MRE 404(b) and that its admission resulted in an erroneous jury instruction, errors deserving of abuse of discretion and *de novo* review, respectively. *Id.* at 18 (first citing *United States v. Hyppolite*, 79 M.J. 161, 164 (C.A.A.F. 2020); and then citing *United States v. Guardado*, 77 M.J. 90, 93 (C.A.A.F. 2017)).

Again, Petitioner asks for a standard of review much less deferential than that permitted by precedent. The appellate decisions from military courts explicating their own standard of review on direct appeal have no relevance to how this Court should evaluate

---

[4] In his Traverse, Petitioner cites to *United States v. Mendoza*, No. 23-0210, 2024 WL 4487558 (C.A.A.F. Oct. 7, 2024), as a more recent case undermining the legal and factual sufficiency of his convictions, *see* Traverse at 5–7, but *Mendoza* is only relevant insofar as the merits of Petitioner's claim are concerned. As discussed above, the Court need not reach the merits under the "full and fair consideration" standard of review.

[5] The Court is skeptical that Petitioner's MRE 404(b) argument is even within the Court's jurisdiction on collateral habeas attack at all, as the "full and fair consideration" standard of review crafted by *Burns* and its progeny "is limited to issues concerning constitutional fairness and does not include interpretation of military procedural rules." *Rich v. Stackley*, No. 3:17-cv-01298-GPC-JMA, 2018 WL 1791887, at *3 (S.D. Cal. Apr. 16, 2018) (citing *Burns*, 346 U.S. at 139). But because Respondent does not raise that argument, the Court declines to reject the claim on that ground alone.

Petitioner's claims on collateral attack in a habeas corpus challenge. *Threats*, 2023 WL 8112601, at *3 ("De novo review is only warranted where 'the military courts manifestly refused to consider' a petitioner's claims." (citing *Burns*, 346 U.S. at 142)). The lone inquiry before the Court is whether the military courts have given full and fair consideration to Petitioner's claim. *Broussard*, 466 F.2d at 818 ("But once it has been concluded by the civil courts that the military had jurisdiction and dealt fully and fairly with all such claims, it is not open to such courts to grant the writ simply to re-evaluate the evidence." (quoting *Sunday*, 301 F.2d at 873)). As above, the answer is clearly yes.

On direct appeal, the AFCCA considered and rejected an identical argument to the one here. The court reviewed the specific evidence Petitioner challenged as improperly admitted acts of alleged "coercive control," reviewed the alleged improper jury instructions, recited the relevant rule of evidence and standard of review, and comprehensively rejected Petitioner's argument. *See Edwards*, 2023 WL 8543590, at *2–6. In rejecting Petitioner's claim, the court noted that he was "generally correct that, under the facts of this case, the evidence of coercive control and intimate partner violence did not directly relate to the factual determination that SL was asleep at the times [Petitioner] penetrated her vagina," but it went on to explain that SL's testimony concerning alleged "coercive control" was relevant to SL's credibility as a witness. *Id.* at *6. SL's credibility was essential to the trial because "the reason why SL did not immediately report [the penetrations] became particularly relevant," so the AFCCA concluded that the evidence of "coercive control" was "properly considered . . . on . . . the sexual assaults upon a sleeping person" specifications. *Id.* With that reasoned analysis, the court concluded that "the military judge did not err in either his admission or nor [sic] his instructions on the Mil. R. Evid. 404(b) evidence." *Id.* As above, irrespective of the correctness of the AFCCA's conclusion, it is clear the court gave full and fair consideration

///
///
///

to the claim.[6] *See Donoho*, 2024 WL 2952535, at *1 (rejecting the petitioner's argument that the district court must consider whether the AFCCA reached its decisions "thoroughly and correctly").

### IV.   Ineffective Assistance of Counsel

Petitioner's final claim for relief is twofold. He first argues, under *Strickland v. Washington*, 466 U.S. 668 (1984), that his trial counsel was ineffective for failing to request hospitalization records related to SL's purported hospitalization for a suicide attempt, which could have been used to "counter[] the Government's MRE 404(b) evidence." Pet. at 21–22. In his Petition, besides setting the table with a formulaic legal standard for ineffective assistance of counsel claims, Petitioner does not develop this argument beyond the aforementioned conclusory assertion. Nor does Petitioner devote any of his Traverse to rebutting Respondent's argument that the military courts fully and fairly considered the claim. *See generally* Traverse. Plaintiff's second argument, just as perfunctory as his first, is that his appellate counsel failed to raise the issue on appeal. Pet. at 22.

Neither argument has merit, but a bit more procedural history is necessary to better understand the ineffective assistance of counsel claims. As discussed above, key to the prosecution's evidence at trial that Petitioner penetrated SL while SL was asleep was the testimony of SL herself. SL's testimony included extended colloquy with trial counsel about the multiple times she woke up from a state of being asleep to find Petitioner in the act of penetration. *See, e.g.*, *Edwards*, 2023 WL 8543590, at *7. Critically, SL had declined to report these instances of penetration to her Family Advocacy Treatment Manager, who had been appointed to provide SL with support services when she notified

---

[6] In his Traverse, Petitioner cites to *Andrew v. White*, 145 S. Ct. 75 (2025), as a more recent case undermining the validity of his convictions as tainted by allegedly improper MRE 404(b) evidence, *see* Traverse at 3–5, but *Andrew* is only relevant insofar as the merits of Petitioner's claim are concerned. As discussed above, the Court need not reach the merits under the "full and fair consideration" standard of review.

Petitioner's military command about her domestic troubles. *See id.* at *6. Trial defense counsel put SL's credibility further in issue when SL was cross-examined "on the fact that though she said that [the penetration] was happening, she did not report it to Family Advocacy." *Id.* In response, the prosecution introduced "coercive control and intimate partner violence" evidence to explain "the reason why SL did not immediately report" the abuse. *See id.* The Court understands this evidence of "coercive control" to constitute what Petitioner describes as "the Government's MRE 404(b) evidence." Pet. at 21–22.

Petitioner now argues that his trial counsel should have sought additional evidence with which to further impeach SL's credibility and that his trial counsel's failure to do so amounts to ineffective assistance of counsel. Specifically, Petitioner suggests that SL was hospitalized at some point in her past for attempting suicide and that his trial counsel failed to exercise reasonable judgment by not requesting SL's medical records, which "would have countered the Government's MRE 404(b) evidence." Pet. at 21–22. Petitioner relies on the CAAF's 2022 decision in *United States v. Mellette*, 82 M.J. 374 (C.A.A.F. 2022), as establishing the rule that "mental health records that do not contain psychotherapist-patient privilege communications are discoverable," thus clearing the way for a discovery request related to SL's hospitalization. Pet. at 21.

Petitioner failed to raise his ineffective assistance of trial counsel argument with the AFCCA on direct appeal, where he was represented by military appellate defense counsel Major Heather M. Bruha and civilian appellate defense counsel Joshua R. Traeger.[7] Instead, Petitioner raised the same arguments the Court rejected above as well as an argument that his sentence was inappropriately severe. *Edwards*, 2023 WL 8543590, at *1. Subsequently, when Petitioner sought further review by the CAAF after the AFCCA affirmed his convictions, he again failed to raise the argument in his petition for a grant of

---

[7] The AFCCA opinion lists as appellate defense counsel Major Heather M. Caine, but the Court interprets this to be the same individual as the one later referred to as Major Heather Bruha. *See Edwards*, 2023 WL 8543590, at *1.

review. *See* ECF No. 11-2. Military appellate defense counsel Major Bruha, who had represented Petitioner before the AFCCA, continued to represent Petitioner as he sought CAAF review. *See id.* It was not until fifty-six days after the CAAF rejected Petitioner's grant of review on March 28, 2024, that Petitioner raised his ineffective assistance of counsel claims for the first time in seeking reconsideration, this time without counsel, of the CAAF's denial of his petition for a grant of review.[8] *See* ECF No. 11-5 at 22. Recognizing that his Petition for Reconsideration was untimely, Petitioner contemporaneously filed a Motion for Leave to File Out-of-Time Petition for Reconsideration and to File *Pro Se*. ECF No. 11-5 at 17–18. In his request to file out-of-time, Petitioner argued that good cause existed to grant the request because he was "no longer represented by his former civilian appellate defense counsel, Mr. Joshua Traeger, or military appellate defense counsel, Maj Heather Bruha." *Id.* at 17. The United States opposed Petitioner's Petition for Reconsideration because the Petition was untimely and without good cause. *See* ECF No. 11-5 at 22–24. Without explaining its reasoning, the CAAF denied both the Petition for Reconsideration and Motion for Leave to File Out-of-Time on July 16, 2024. ECF No. 11-6 at 2.

Bearing in mind this procedural backdrop, the Court must remain cognizant of "the limited function of the civil courts to determine whether the military have given fair consideration to each of the[] claims." *Burns*, 346 U.S. at 145. Once again, Petitioner urges the Court to review his claims *de novo*, Pet. at 20 (citing *United States v. Akbar*, 74 M.J. 364, 379 (C.A.A.F. 2015)), but contrary to that suggestion, the Court need only ensure the military courts gave full and fair consideration to his claims, *see, e.g.*, *Erickson v. Startle*, No. CV-16-00513-TUC-JGZ, 2019 WL 1921596, at *3 (D. Ariz. Apr. 30, 2019) (applying the "full and fair consideration" standard of review from *Burns* in considering a

---

[8] Petitioner's Petition for Reconsideration with the CAAF is not dated, *see* ECF No. 11-5 at 14–15, but the Court assumes as accurate the representation in Respondent's Opposition to the Petition that the Petition was filed on May 23, 2024, *see id.* at 22. Petitioner does not dispute this timeline of events.

habeas corpus petition from a court-martial conviction). Despite a light record before the Court, the military courts have met their burden.

### A.     *Ineffective Assistance of Trial Counsel*

As an initial matter, Petitioner waived his ineffective assistance of trial counsel claim by failing to timely raise it in the military courts. *See Threats*, 2023 WL 8112601, at *4 ("If a petitioner failed to present a claim to the military courts, it is waived." (first citing *Davis*, 876 F.2d at 1448; and then citing *Watson*, 782 F.2d at 145)). Petitioner does not dispute that he did not raise the claim until he filed his Petition for Reconsideration with the CAAF seven weeks after that court denied his petition for a grant of review. Petitioner's delay, therefore, resulted in a straightforward violation of Rule 31(a) of the Rules of Practice and Procedure for the United States Court of Appeals for the Armed Forces, which requires petitions for reconsideration to "be filed no later than fourteen days after the date of any order, decision, or opinion by the Court."

"Although the military justice system provides an adequate mechanism for redressing claims of constitutional error at a court-martial, in this case including a second set of appointed attorneys to examine the record for any errors overlooked by trial counsel," Petitioner did not timely raise his ineffective assistance of trial counsel claim in the military courts and has not shown, let alone argued, good cause in this Court for his failure to do so. *See Davis*, 876 F.2d at 1450. Petitioner did attempt to raise the argument when he filed his overdue Petition for Reconsideration, but the CAAF considered and rejected his good cause argument as it related to filing past the deadline, and the Court's role on collateral review is not to question the CAAF's decision to enforce a procedural timing rule. *See id.* at 1449 (explaining that the rationale for deferring to military courts' procedural rules, such as the waiver doctrine, includes "respect due a parallel and independent system of justice, the desirability of resolving claims without the need for duplicative litigation, and the benefits of having constitutional decisions made in the first instance by a judge with the opportunity to view counsel, witnesses and jury"). Accordingly, because Petitioner's claim of ineffective assistance of trial counsel was not properly presented to the military courts,

the claim is waived. *See Tillery v. Shartle*, No. CIV 16-204-TUC-CKJ (LAB), 2017 WL 4337343, at *5 (D. Ariz. Sept. 29, 2017) ("[The petitioner] has waived those claims that he failed to present to the military courts." (citing *Davis*, 876 F.2d at 1448–50)); *see also Rios v. Lansing*, 186 F. Supp. 2d 1178, 1181–82 (D. Kan. 2002) ("[The petitioner] could have raised this issue before the CAAF . . . when his case was first being considered on appeal. He did not do so, and the failure to raise the issue before the military courts bars presentation of the issue here.").

Even if the Court were to consider Petitioner's ineffective assistance of trial counsel claim on the merits, however, the claim would still fail. *See Lewis v. United States*, No. 3:18-cv-00911-L-KSC, 2019 WL 5320691, at *10 (S.D. Cal. Oct. 21, 2019) (noting that "ineffective assistance of counsel can constitute cause for overcoming a procedural default"). To prevail on an ineffective assistance of counsel claim, a defendant must show that counsel's performance was deficient, and that this deficient performance prejudiced the defendant. *Strickland*, 466 U.S. at 687; *United States v. Jeronimo*, 398 F.3d 1149, 1155 (9th Cir. 2005). As to the first prong, defense counsel's conduct is presumed to be reasonable. *Strickland*, 466 U.S. at 689. And as to the second prong, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Rodney v. Garrett*, 116 F.4th 947, 954 (9th Cir. 2024) (quoting *Strickland*, 466 U.S. at 496).

Here, Petitioner cannot establish that his trial "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. SL was exhaustively cross-examined at trial about her experiences waking up in the middle of the night to find herself being penetrated by Petitioner, *see Edwards*, 2023 WL 8543590, at *3, as trial defense counsel probed SL about her failure to report the unwanted penetrations to the Family Advocacy Project, *see id.* Petitioner suggests in his Petition that evidence related to SL's purported hospitalization due to a suicide attempt "would have countered the Government's MRE 404(b) evidence" that the prosecution used to bolster SL's credibility, but that suggestion is mere conjecture. Introducing evidence of SL's

hospitalization was far from exculpatory, and trial defense counsel "could have at best challenged [SL's] credibility and at worst further eroded Petitioner's credibility" by illuminating the possibility that his actions may have been the direct cause of SL's suicidal ideation. *James v. Cate*, No. 11cv1910-IEG (NLS), 2012 WL 4061794, at *19 (S.D. Cal. July 9, 2012). "Surmounting *Strickland*'s high bar is never an easy task," and "[e]ven under *de novo* review, the standard for judging counsel's representation is a most deferential one." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). Because Petitioner has failed "to establish that his [trial] counsel's actions fell below 'an objective standard of reasonableness,'" the Court rejects the contention that Petitioner's conviction was tainted by ineffective assistance of counsel even under a *de novo* standard of review. *See United States v. Akintonde*, No. 22CV1883-JLS, 2023 WL 2777452, at *1 (S.D. Cal. Apr. 4, 2023).

### B.    *Ineffective Assistance of Appellate Counsel*

Similarly, Petitioner's ineffective assistance of appellate counsel claim likewise fails on the merits. *See Lewis*, 2019 WL 5320691, at *10 (noting that "ineffective assistance of counsel can constitute cause for overcoming a procedural default"). Though Petitioner correctly notes that the Supreme Court has recognized a limited right to counsel in a criminal defendant's first appeal as of right, it has also held that "the attorney need not advance *every* argument, regardless of merit, urged by the appellant." *Evitts v. Lucey*, 469 U.S. 387, 394 (1985) (emphasis in original) (citing *Jones v. Barnes*, 463 U.S. 745 (1983)); *see also Featherstone v. Estelle*, 948 F.2d 1497, 1507 (9th Cir. 1991) ("Where "trial counsel's performance, although not error-free, did not fall below the *Strickland* standard[,] . . . petitioner was not prejudiced by appellate counsel's decision not to raise issues that had no merit.").

Here, it is unclear in what precise fashion Petitioner claims his appellate counsel erred. Petitioner argues his "attorneys were ineffective for failing to raise . . . on appeal the discoverability and admissibility of mental health information under *Mellette*," but the record does not show that these issues were ever broached at the trial level. Pet. at 22. The

Court thus understands Petitioner's claim to encapsulate his appellate counsel's failure in not raising the ineffective assistance of trial counsel claim. But the Court rejected Petitioner's ineffective assistance of trial claim above, and "[a] failure to raise untenable issues on appeal does not fall below the *Strickland* standard." Thus, the Court concludes that Petitioner's appellate counsel did not render ineffective assistance on appeal. *Turner v. Calderon*, 281 F.3d 851, 872 (9th Cir. 2002) (citing *Featherstone*, 948 F.2d at 1507); *see also Luevano v. Martel*, No. 09cv145 WQH (RBB), 2010 WL 3034693, at *3 (S.D. Cal. July 29, 2010) ("Because this Court denies Petitioner's first claim of ineffective assistance of trial counsel, Petitioner's claim against appellate counsel for failure to raise ineffective assistance of trial counsel on appeal must also be denied.").

## CONCLUSION

In light of the foregoing, the Court **DENIES** the Petition (ECF No. 1). The Court need not issue a certificate of appealability in this case. *See Udom v. U.S. Immigr., Customs Enf't*, No. 11-CV-2699-IEG NLS, 2012 WL 380135, at *4 (S.D. Cal. Feb. 6, 2012) (noting no certificate of appealability is required for order denying § 2241 petition (citing *Forde v. U.S. Parole Comm'n*, 114 F.3d 878, 879 (9th Cir. 1997))). As this concludes the litigation in this matter, the Court **DIRECTS** the Clerk of the Court to close the file.

**IT IS SO ORDERED.**

Dated: March 19, 2025

Hon. Janis L. Sammartino
United States District Judge